liAMY, Judge.
The plaintiff filed suit against the City of Lafayette, among others, asserting that the City was negligent in failing to properly maintain a traffic light within its control thereby acting as a cause of the intersectional collision from which she alleges injuries. The lower court granted a Motion for Summary Judgment filed by the City. Both the plaintiff and the driver of the other vehicle involved in the accident appeal. We reverse and remand for further proceedings.
Factual and Procedural History
The interseetional collision at issue in this appeal occurred in Lafayette, Louisiana on the afternoon of July 10,1994. The accident, which occurred at the intersection of North University and an off-ramp of Interstate 10, involved the vehicle driven by the plaintiff, Robin Melancon, and the vehicle of John Seaux, one of the defendants. Melancon’s deposition testimony indicated that, prior to the accident, she 12exited 1-10 westbound and intended to turn left onto North University when the accident occurred. She testified to the following version of events:
I was entering — I was coming off the I — 10 off ramp onto University when I came to a stop sign and I noticed the red lights were out, and I looked around and I noticed the people were crossing like a four-way. And that’s when I looked and I seen a truck at a distance, and it was my turn, so I took and I crossed the lane, and from there, I don’t know anything else. I was proceeding cautiously, that’s all I know.
The record reflects that the truck referred to by the plaintiff was that being driven by Seaux, who was northbound on North University. He testified in deposition that he proceeded into the intersection under a green light. He said that he saw the plaintiff approaching on the off-ramp and, further, that he never saw her stop. The plaintiff’s affidavit, also submitted to the lower court, indicates that she saw the truck after stopping, that she felt he was at a safe distance for her to enter the intersection, and, further, that “[bjased upon her evaluation of the circumstances, she believed that Mr. John Seaux would cause the 1991 GMC Pickup Truck to either slow down and/or stop as other approaching vehicles.”
Furthermore, a portion of the deposition of Glenn Jaubert, a witness to the accident, was also presented to the court. His testimony indicates that he, too, was on the interstate off-ramp, that he could recall the plaintiffs *696 brake lights being on, and that he saw her stop for an undisclosed period prior to the accident. Also witnessing the accident was Joel Thevenet, whose deposition testimony indicated that he could tell the accident was about to occur because neither Seaux nor the plaintiff were stopping.
| aMelancon and her husband, Joseph Me-lancon, filed suit for the recovery of damages naming both Seaux and his insurer, Louisiana Farm Bureau Casualty Insurance Company, as well as the City of Lafayette and the State of Louisiana through the Department of Transportation and Development, Department of Highways. She alleged that both the City and the State were liable for improper maintenance of the traffic signal and for “[flailing to safely and adequately maintain the traffic signal in question.”
Following the filing of this original petition, Seaux and Farm Bureau filed a recon-ventional demand against Melancon and her automobile liability insurer, Allstate Insurance Company, alleging that Melancon was negligent and, further, seeking recovery of all payments made pursuant to Seaux’s Farm Bureau policy. The Melancons answered the reconventional demand denying the allegation of negligence and also filing a cross-claim seeking, from all of the defendants named in the original petition, recovery for payments made to Melancon under her Allstate policy.
The matter now before us was instituted when the City of Lafayette filed a Motion for Summary Judgment attaching the affidavit of Ray Cottam, the District Supervisor for the Lafayette Utilities System, wherein he stated that the light at the intersection was not functioning due to a power outage. The City also presented a portion of the plaintiff’s deposition. In the attached memorandum in support of summary judgment, the City argues that the plaintiffs deposition testimony indicates that she knew that the light was not working and that she negligently proceeded into the intersection despite having seen Seaux’s oncoming vehicle. This negligence, Laccording to the City, is the sole cause of the accident. Without stating reasons for ruling, the lower court granted the Motion for Summary Judgment.[1]
Both Melancon and Seaux appeal the summary judgment. Melancon asserts the following error:
The trial court improperly found that Robin Melancon was the sole cause of the automobile accident at issue despite the fact that plaintiffs submitted evidence showing that material questions of fact exist with regard to whether the City and the defendanVdriver, John Seaux, discharged their respective duties and also caused the automobile accident.
In his brief to this court, Seaux argues that the City’s evidence did not preclude liability on all possible theories of recovery. As the appellants arguments are similar, we will address them together.
Discussion
Melancon argues that summary judgment was inappropriate in this ease because the City failed to meet its burden of proving that no genuine issues of material fact exist. In particular, Melancon asserts that the City failed to meet its duty with regard to causation since her submission in opposition to summary judgment indicates that the accident was caused by the concurrent negligence of Seaux and the City. Seaux argues, in brief, that the City did not meet its burden with regard to causation since the plaintiffs affidavit and deposition indicate that Melan-con, in fact, Rexercised the requisite degree of caution and, therefore, the City’s argument that driver negligence prohibits its own liability is unfounded.
La.Code Civ.P. art. 966 contains the guidelines for summary judgment and provides, in part, as follows:
*697 A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiffs motion may. be made at any time after the answer has been filed. The defendant’s motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
| sAlthough once disfavored, recent amendment to this provision has changed the traditional rule to favor summary judgment in Louisiana. See Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41. In the past, the pleadings and supporting documents of the mover were strictly scrutinized while those filed by the party opposing summary judgment were indulgently treated. Id. Presently, however, the documents submitted by each of the parties should receive equal scrutiny. Id.
On a motion for summary judgment, a trial court must initially determine whether the moving party’s documents resolve all material factual issues. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94); 639 So.2d 730. “To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact.” Id. at 28; 752 (quoting Industrial Sand and Abrasives, Inc. v. Louisville & Nashville R.R. Co., 427 So.2d 1152, 1154 (La.1983)). In considering whether a genuine issue exists, “courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.” Walker v. Kroop, 96-0618, p. 2 (La.App. 4 Cir. 7/24/96); 678 So.2d 580, 582. When considering summary judgments on appeal, the court must review the matter de novo. Smith, 93-2512; 639 So.2d 730.
In the present matter, the trial court granted summary judgment without assigning reasons. However, in the memorandum supporting the motion, the City asserted that the negligence of the plaintiff prohibited the imposition of liability on the City. In support of this argument, the City attached the affidavit of Ray Cottam |7and a portion of the plaintiffs deposition. These filings, apparently, show that although the light was malfunctioning, the plaintiff entered into the intersection despite knowledge of the malfunction and Seaux’s approaching vehicle. Therefore, according to the City, the plaintiffs breach of her own duty to exercise extreme caution in such a situation precludes the finding of liability on the part of the *698 City.[2] Several pre-comparative fault cases, or those applying pre-comparative fault principles, were cited for the proposition. See Davis v. Eckert, 454 So.2d 275 (La.App. 4 Cir.1984); Wilson v. Allstate Ins. Co., 446 So.2d 786 (La.App. 4 Cir.1984).
In brief to this court, the City advances the same position, raising additional cases for consideration. See Norris v. City of New Orleans, 433 So.2d 392 (La.App. 4 Cir.1983); Orazio v. Durel, 407 So.2d 75 (La.App. 4 Cir.1981). Furthermore, the City asserts that several post-comparative fault cases have adopted the principle that driver negligence bars the imposition of liability on a municipality for a malfunctioning or damaged traffic signal. See Watson v. State Through Dept. of Transp. and Development, 529 So.2d 427 (La.App. 1 Cir.), writ denied, 533 So.2d 361 (La.1988); Hayes v. City of New Orleans, 527 So.2d 1002 (La.App. 4 Cir.), writ denied, 532 So.2d 770 (La.1988); Ponthier v. City of New Orleans, 496 So.2d 1050 (La.App. 4 Cir.), writ denied, 498 So.2d 15 (La.1986). Our review of these cases, however, indicates that they do not stand for the proposition that driver negligence [gprohibits the imposition of liability on a municipality; rather, they stand for the proposition that a plaintiff may not recover without proving an essential element of the attendant duty-risk or strict liability analysis, namely causation.[3] Furthermore, | git is important to note that those cases were resolved after a full trial on the merits and not by summary judgment.
While many of the eases referenced by the City incorporate principles in place before the introduction of comparative fault in Loui *699 siana, at the time of the accident now at issue, La.Civ.Code art. 2323[4] provided as follows:
[ 10When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
In a similar matter, a panel of this court declined to accept the argument now advanced by the City. See Tucker v. Pinder, 93-563 (La.App. 3 Cir. 2/2/94); 631 So.2d 735, writs denied, 94-0515, 94-0547 (La.4/7/94); 635 So.2d 1138. In that case, a plaintiff sued for damages related to an accident caused when a driver failed to stop before entering into an intersection where a stop sign had been bent over or knocked down. The plaintiff sued and named as defendants the driver of the other vehicle (Mrs. Pinder), the Louisiana Department of Transportation and Development, and the Calcasieu Parish Sheriffs Office. The plaintiff alleged that DOTD was liable for the accident pursuant to La. Civ. Code art. 2317. The court, however, concluded that DOTD could not be found to be strictly liable because, even assuming the plaintiff had proven notice, there was not a reasonable amount of time between that notice and the accident. With regard to the Sheriff, the plaintiff alleged that the Sheriff had knowledge of the damaged sign but did nothing to have the situation corrected, thereby subjecting the drivers to an unreasonable risk of harm. The Sheriff maintained that the defendant driver was the sole negligent party and, therefore, the Sheriff could not be found liable. The court reasoned as follows:
1 nThe trial judge found that while Mrs. Pinder was negligent, the Sheriffs Office was also negligent in its acts or omissions with regard to the sign. The Sheriff would have us believe that an accident may have only one cause-in-fact. This is not so.
“An act of omission is considered to be a cause-in-fact of harm to another if it was a ‘substantial factor’ in bringing about the accident. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970); LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978). Restatement of Torts 2d, Sections 431-33 (1965). As noted in the restatement, factors which may be considered in determining whether the actor’s negligence is a substantial factor include ‘whether the actor’s conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm ... ’
The ‘substantial factor’ test is akin to the ‘but for’ test (i.e. the accident would not have happened but for the defendant’s negligence), except that where more than one party’s negligence would have caused the accident absent the other party’s negligence, Dixie, supra, and *700 LeJeune, supra, hold both to be causative.
As succinctly stated by the Louisiana Supreme Court in LeJeune, supra:
‘As Prosser [on Torts, Section 41 at pp. 237-38 (4th Ed.1971)] notes, the “but for” test (that the accident would not have happened but for the defendant’s negligence), while it explains the greater number of cases, does not serve as an adequate test for the present situation: ‘If two causes occur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result, some other test is needed ...
‘ In such cases it is quite clear that each cause has in fact played so important a role in producing the result that responsibility should be imposed upon it; and it is equally clear that neither can be absolved from that responsibility upon the ground that the | igidentical harm would have occurred without it, or there would be no liability at all. Id., p. 239.’ ”
Trahan v. State, Department of Transportation and Development, 536 So.2d 1269, 1272 (La.App. 3rd Cir.1988), writ denied, 541 So.2d 854 (La.1989).
(emphasis added)[.]-
The accident might have occurred even had Deputy Flanagan taken action to correct the situation. However, it is also true that the accident might not have happened but for the combined negligence of Mrs. Pinder and Deputy Flanagan.
“The mere possibility that the accident would have occurred despite the required precautions does not break the chain of causation.”
Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298, 304 (1962).
The Sheriffs acts or omissions were a cause-in-fact of the accident. Further, the Sheriff breached a duty owed to protect this plaintiff from this type of harm. As a result, the trial judge correctly found the Sheriff liable.
Id. at 738. We find the instant matter analogous due to the introduction of comparative fault principles and the possibility of more than a single cause-in-faet.
As we have determined that comparative negligence could allow recovery from the City if the requisite elements were proven, we must determine whether, based on their submission, the City has proven that no genuine issues of material fact exist. The petition instituting this matter alleged, in part, that “[t]he City of Lafayette, by having a malfunctioning traffic signal contributed to the accident and is liable jointly, severally and in solido, unto petitioners for damages, for their failure to maintain the traffic signal located at the 1600 block of North University in the City of Lafayette I13_” Thus, the plaintiffs alleged a negligence cause of action against the City. In order to sustain such a cause of action, “a plaintiff is required to prove the following by a preponderance of the evidence: (1) the existence of a duty; (2) the breach of that duty; (3) the defendant’s conduct was a cause-in-fact of the plaintiffs injuries; (4) the conduct was a legal cause of the injuries; and (5) actual damages which resulted from the conduct.” Harkins v. Gauthe, 97-912, p. 6-7 (La.App. 3 Cir. 2/4/98); 707 So.2d 1308, 1311 (citing Roberts v. Benoit, 605 So.2d 1032 (La.1991)(on rehearing)), writ denied, 98-0584 (La.4/24/98); 717 So.2d 1170. Further, the traditional concept that a plaintiff cannot recover in negligence without proving that the defendant had either actual or constructive knowledge is now addressed in strict liability cases where the defendant is a governmental actor as La.R.S. 9:2800(B) provides a similar requirement that, in such cases, actual or constructive notice is required for recovery. See Maxwell v. Bd. of Trustees for State Colleges & Universities, 96-1207 (La.App. 3 Cir. 3/19/97); 692 So.2d 641, writ denied, 97-0996 (La.6/13/97); 695 So.2d 987.[5]
*701 Based on our review of the documents submitted, we do not conclude that the City has proven that all genuine issues of material fact have been resolved. Nor do we find that the submission conclusively proves that the plaintiff would be unable to | i4prove the elements of negligence. Rather, the submission primarily shows that Melancon entered into the intersection despite her knowledge of the malfunctioning light and the approaching vehicle. Further, the affidavit of Ray Cottam shows only that the light was malfunctioning due to a power outage which, according to Cottam’s belief, was attributable to lightning. The information submitted to show driver negligence could, of course, bar recovery from the City if contributory negligence were still applicable. As previously stated, however, comparative fault must now be considered, and driver negligence, alone, will not bar recovery if the City is also negligent to some degree.
Reference to the plaintiffs petition indicates that a rather general type of negligence is alleged against the City. This allegation could involve not only the malfunctioning/maintenance of the light, but also the City’s responses and the adequacy thereof, to their knowledge of the malfunction. Therefore, we are mindful of the general duty involved in this matter. As noted by the Louisiana Supreme Court in Rhodes v. State, Through Dept. of Transp. and Dev., 95-1848 (La.5/21/96); 674 So.2d 239, 242 (quoting Briggs v. Hartford Ins. Co., 532 So.2d 1154 (La.1988)):
It is well settled that a governmental authority that undertakes to control traffic at an intersection must exercise a high degree of care for the safety of the motoring public.
Furthermore, the plaintiff will be required to prove, among the other elements of negligence, that this duty extended to the plaintiff in this circumstance, i.e., the plaintiff will have to prove legal cause. This element, and the plaintiffs ability to prove it, appears to be the critical inquiry in this appeal from the summary judgment.
15 In Todd v. State, Through Social Services, 96-3090, p. 6-7 (La.9/9/97); 699 So.2d 35, 39, the Louisiana Supreme Court stated that “whereas the question of cause-in-fact involves a factual determination, the determination of legal cause involves a purely legal question.” However, as the following passage indicates, this legal question cannot be made without consideration of the factual background of the matter before the court.
The scope of protection (legal cause) inquiry is a question of policy whether the particular risk falls within the scope of the duty. See Faucheaux, 615 So.2d at 292. The duty-risk analysis is “highly fact-intensive” and the legal cause inquiry “fact bound.” Roberts, 605 So.2d at 1055. Faucheaux, supra, summarizes the test for legal cause:
The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner.... In determining the limitation to be placed on liability for defendant’s substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced.
Faucheaux, 615 So.2d at 294 (citations omitted)....
Nicholson v. Calcasieu Parish Police Jury, 96-314, p. 6-7 (La.App. 3 Cir. 12/11/96); 685 So.2d 507, 511.
While ultimately, the court may conclude that any action or inaction by the City was not the legal cause of the intersectional collision now at issue, we do not find that the City’s submission, at this time, sufficiently clarifies the attendant factual background to foreclose further proceedings. Reference to the documents filed by the parties indicates that credibility determinations remain with regard to each of the driver’s actions since conflicting versions are apparent from the deposition excerpts. Furthermore, the plaintiffs submission does not clarify the quality of the City’s_[i6knowledge of the light malfunction and their response thereto. Thus, based on the limited record before us, it is *702 difficult to know whether that response was appropriate. Accordingly, we find that genuine issues of material fact remain. These facts, may ultimately indicate that driver negligence was of such a nature that their actions were unforeseeable and, therefore, the City could not be the legal cause of the accident. However, the evidence now before us does not eliminate all other possibilities. Therefore, at this time, such a determination is premature.
DECREE
For the foregoing reasons, the decision of the lower court is reversed and the case is remanded to the lower court for further proceedings. All costs of this proceeding are assigned to the City of Lafayette.
REVERSED AND REMANDED.

. When this judgment was initially filed by the appellants, this court ordered a remand to the lower court finding that the judgment was not appealable since it was a partial judgment. On remand, the parties agreed that the judgment was final and the court designated the judgment as final judgment making an express determination that there was no reason for delay. Therefore, due to this revised judgment, the matter is properly before this court. See La.Code Civ.P. art.l915(b).

. In Soprano v. State Farm. Mut. Auto. Ins. Co., 246 La. 524, 165 So.2d 308 (La.1964) 246 La. 524, 165 So.2d 308, the Louisiana Supreme Court held that a motorist approaching a nonoperative signal device has a duty to exercise extreme caution at the intersection and to refrain from proceeding until it has been ascertained that safe negotiation of the intersection is possible.

. See Watson, 529 So.2d 427, 433-34 wherein the fourth circuit held as follows:
We recognize this accident occurred after the adoption of the comparative negligence doctrine in Louisiana. Nonetheless, though victim fault may no longer be a complete bar to recovery in strict liability cases, a plaintiff still bears the burden of proving causation in a strict liability case, i.e., the claimant must prove that under the circumstances the "thing" presented an unreasonable risk of harm which resulted in the damage. Kent v. Gulf States Utilities Company, supra; Ponthier v. City of New Orleans, supra.
In the instant case, where there was no “trap” to motorists approaching the intersection, we conclude that the damaged yield sign did not create an "unreasonable risk of harm” within the meaning of LSA-C.C. art. 2317. Furthermore, because plaintiffs conduct (in proceeding into the uncontrolled intersection after observing a rapidly approaching vehicle) was the sole legal cause of the accident, we conclude she is 100% at fault under a comparative negligence analysis. See Davis v. Eckert, 454 So.2d 275 (La.App. 4th Cir.1984), wherein the court exonerated the City from strict liability in an intersectional collision involving a defective traffic signal light and apportioned fault at 50% each to two motorists whose combined negligence had caused the accident.
(Footnote omitted.) See also Ponthier, 496 So.2d 1050 wherein the fourth circuit used similar language in reversing the apportionment of fault to a municipality where the plaintiff’s inattentiveness was the sole legal cause of the accident.
See Hayes, 527 So.2d 1002, 1004 wherein the fourth circuit found as follows:
[Ajppellanl maintains that the City of New Orleans’ breach of duty, i.e., the failure of Officer Defillo to remain at the scene and control the intersection, was a cause-in-fact of the accident. That the City may have had a duty, and may have breached that duty, does not make the breach automatically a cause of the accident. If the cause of the accident is one hundred per cent the fault of third parties, then the City is exonerated from liability. A duty-risk analysis should not be short-circuited to find cause as a necessary conclusion of a finding of a duty and a breach. Whether a defendant’s actions caused an injury is an independent inquiry from whether the defendant owed plaintiff a duty and whether that duty was breached. If the actions of defendant did not cause the injury then it becomes immaterial whether there was a duty or a breach. Lack of causation, particularly a finding of one hundred per cent third-party causation, defeats liability under either LSA-C.C. Art. 2315 or LSA-C.C. Art. 2317.
... While third-party fault should be applied on a comparative fault basis, when the third-party fault is found to be one hundred per cent of the cause of the injury, defendant necessarily bears no fault.
After reviewing the record, we agree with the trial court's assessment of causation. The negligence of the two drivers combined to establish one hundred percent of the cause of the accident. The City, therefore, bears no liability-

. By amendment effective April 16, 1996, La.Civ. Code art. 2323 now provides as follows:
A.In any action for damages where a person suffers injury', death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injuiy, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

. As explained by the Louisiana Supreme Court in Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 (La.1982):
Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from *701 the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing presented an unreasonable risk of harm.