347 So.2d 281 (1977)
Frank RICHARDS, Plaintiff-Appellee,
v.
Thelma Ford MARLOW et al., Defendants-Appellants.
No. 13264.
Court of Appeal of Louisiana, Second Circuit.
May 23, 1977.
Rehearing Denied June 22, 1977.
*282 Gold, Hall, Hammill & Little by Edward E. Rundell, Alexandria, for defendants-appellants Thelma Ford Marlow and The Travelers Ins. Co.
Watson & Watson by Philip B. Watson, Jr., St. Joseph, for defendant and third party plaintiff-appellantSpencer Ford.
Gist, Methvin & Trimble by David A. Hughes, Alexandria, for defendant and third party defendant-appellant State Farm Fire & Cas. Co.
Sturgeon & Gore by Brent S. Gore, Ferriday, for plaintiff-appellee Frank Richards.
Before HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied June 22, 1977.
HALL, Judge.
Plaintiff brought this action for damages individually and on behalf of his minor daughter, Rose Marie Richards, who slipped and fell while walking on a pipe which was formerly part of the substructure of a pier. Thelma Ford Marlow, who owned the land adjacent to the pier, and Spencer Ford, who leased trailer space to plaintiff near the pipe structure, were named defendants, along with their respective insurers. The trial judge rendered judgment in favor of plaintiff for $ 10,000 plus special damages, and all defendants appealed. We reverse the trial court judgment on the basis of our finding that the accident was due to the fault of Rose Marie Richards.
The essential facts are undisputed. At the time of the accident, Rose Marie was a thirteen year old of above average intelligence. The Richards family was one of several families leasing trailer space on the property of Spencer Ford. This property fronted on Lake St. Joseph, and these families often went swimming in the lake with the knowledge and permission of Spencer Ford. They customarily swam near the former pier. The pier originally had a board walkway, but high water on the lake had washed away the boards several years before the accident. Only a skeleton of horizontal and vertical two inch metal pipes remained, as pictured below:

The structure did not extend all the way to the bank. In order to get from the bank to the structure it was necessary for swimmers to wade through the water or make their way across cypress roots and stumps.
The swimmers customarily rested on or dived off of the pipe structure. In addition, some of them, including Rose Marie and her mother, walked the horizontal pipes to get to and from the bank, and, as described by another witness, "just to see if they could walk it." The vertical pipes were too far apart to hold during these walks and anyone *283 who walked the pier necessarily "tightroped" the horizontal bar between the vertical pipes.
On the date of the accident, Rose Marie had been swimming in Lake St. Joseph. She attempted to walk the pipe to the bank but slipped and fell, sustaining injuries to her mouth.
The trial judge found that the pier was unreasonably dangerous and applied the doctrine of attractive nuisance. The application of this doctrine necessarily includes a finding that the injured child was too young to understand and avoid the danger. Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791 (1949). The trial judge found that Rose Marie, because she, her mother, and her friends had previously walked on the pipes without incident, did not realize she was likely to fall.
Whether a child is too young to understand and avoid a danger depends both on the age of the child and the nature of the danger. Rose Marie was an intelligent thirteen year old. She should be expected to understand and avoid a danger as obvious as that of "tightroping" a wet pipe with wet feet. Furthermore, although her testimony indicates that she did not believe she would fall from the pipe, it also indicates that she recognized there was an element of risk. A fair summary of Rose Marie's attitude is that she did not find the degree of danger sufficient to deter her from walking the pipe. She was taking what she thought was a reasonable risk.
Consideration of application of the attractive nuisance doctrine overlaps consideration of the contributory negligence and assumption of the risk defenses. In connection with these defenses, the following discussion from a recent law review article is pertinent:
"The essence of assumption of the risk is twofold: first, knowledge and appreciation of a danger, and second, a voluntary encountering of it. The essence of contributory negligence is simply carelessness. Thus, if a high wire performer were to walk a high wire between two buildings in a careful manner, he would have assumed the risk, but he would not have been contributorily negligent unless, of course, he performed in a careless manner. On the other hand, if one totally inexperienced in high wire performance would undertake the same endeavor, he would be deemed both to have assumed the risk and to have been contributorily negligent. He would have assumed the risk because he knew, appreciated, and voluntarily encountered the danger; he would have been contributorily negligent no matter how much care he employed. He would be deemed careless, if indeed not a fool, for undertaking such a risk with no experience." Crowe, Anatomy of a Tort, 22 Loy.L.Rev. 903 (1976).
Rose Marie encountered the danger voluntarily. We find that she also had full knowledge and appreciation of that danger. She knew that wet feet could slip on a metal pipe and that she could lose her balance. She also knew that if she did slip, there was danger of harm. These were obvious dangers which should have been apparent to a child of her age and intelligence. The attractive nuisance doctrine, therefore, does not apply to this case, as Rose Marie was not too young to understand and avoid the danger. These findings also establish that Rose Marie was contributorily negligent and also assumed the risk of her actions. Recovery is barred, regardless of initial negligence on the part of defendants.
Plaintiff relies on Simmons v. Beauregard Parish School Board, 315 So.2d 883 (La.App. 3d Cir. 1975), writ refused 320 So.2d 207 (La.1975), in which a thirteen year old boy was found to be too young to understand the danger of an explosion of firecracker powder and the safety precautions necessary to prevent such an explosion. That case is not applicable. While the age of the child is the same, the nature of the danger in the instant case is more readily appreciated. This case is more similar to Butler v. City of Bogalusa, 258 So.2d 599 (La.App. 1st Cir. 1972), writ refused 261 La. 544, 260 So.2d 323 (1972), where an *284 eleven year old girl was found to be old enough to appreciate the dangers of rummaging in a city dump, and Patterson v. Recreation and Park Commission for the Parish of East Baton Rouge, 226 So.2d 211 (La.App. 1st Cir. 1969), where a fourteen year old girl was found to understand the danger of falling while walking on a trash barrel placed on its side.
Plaintiff also argues that defendants are strictly liable because a defective thing in their custody caused Rose Marie's injuries, citing Loescher v. Parr, 324 So.2d 441 (La.1975). Assuming arguendo that the structure was defective, the accident was nevertheless caused by the fault of Rose Marie in voluntarily encountering a known danger. Fault of the victim is a recognized defense to LSA-C.C. Art. 2317 strict liability. Loescher, supra.
Finally, plaintiff argues that defendants as landlords are strictly liable for defects on the premises. LSA-C.C. Art. 2695. This argument is based on an assumption that the pipe structure was a pier and that it was defective as such. It was not a pier, was not held out as a walking pier by the owner, and could not have been viewed as such by Rose Marie or any other reasonable person. It was nothing more than a network of pipes and, as such, was not defective.
For the reasons assigned, the trial court judgment is reversed, and plaintiff's suit is dismissed at his costs.
Reversed and rendered.